**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JAMES M. WORTHEM (B-12624),** | |
| **Plaintiff,** | **Case No. 07 C 6687** |
| v. | **Hon. Harry D. Leinenweber** |
| **LYDIA CARASQUILLO,** *et al.*, | |
| **Defendant.** | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, James M. Worthem (hereinafter, "Plaintiff"), currently an inmate at Pontiac Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983. He alleges that Defendants, Lydia Carasquillo, Dr. Andrew King, Marva Douglas, Thomas Dart, Earnest Wright, and Salvador Godinez, were deliberately indifferent to his serious medical needs while he was detained at the Cook County Department of Corrections (the "CCDOC"). The Defendants have filed a Motion for Summary Judgment. In response, Plaintiff has filed a Cross-Motion for Summary Judgment. For the following reasons, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.

Subsequent to filing his response/cross-motion in opposition to Defendants' Motion for Summary Judgment, Plaintiff filed a Motion to Amend his complaint. Federal Rule of Civil

Procedure 15(a) provides that leave to amend a pleading shall be freely given when justice so requires. However, the terms of the Rule do not mandate that leave to amend should be granted in every case. *See Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir., 2002). Leave to amend should be denied if there is undue delay, bad faith, dilatory motive, or undue hardship to the opposing party. *See Park*, 297 F.3d at 612. The decision to allow an amended pleading is within the Court's sound discretion. *See Brunt v. Service Employees Intern. Union*, 284 F.3d 715, 720 (7th Cir., 2002).

Plaintiff's proposed amended complaint does not include Dr. Ting as a Defendant but adds eight new Defendants. The new Defendants and claims appear to be unrelated to the claims in the present complaint. For example, the proposed amended complaint attempts to add Aramark Food Services as a Defendant for a new claim related to the manner in which food is handled at CCDOC, and attempts to add a new claim against Defendant Wright for failing to place Plaintiff in protective custody. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir., 2007) ("unrelated claims against different defendants belong in different suits . . . "). Furthermore, Plaintiff does not indicate that the new claims or Defendants just became known and, based on the Defendants and time frame of the claims (late 2007), it appears Plaintiff would not be able do so.

Plaintiff's untimely motion for leave to file an amended complaint is denied. As discussed above, the proposed new parties and claims are unrelated to the complaint on file. Furthermore, discovery closed on October 20, 2008, and (as addressed below) a dispositive motion is fully briefed as to all claims and Defendants as to the complaint presently on file.

## I. **LEGAL STANDARD**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also, Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir., 2002) ("If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir., 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir., 2007); *Greer v. Board of Educ. of the City of Chicago, Ill.*, 267 F.3d 723, 729 (7th Cir., 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, by specific factual allegations, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

Because both parties have moved for summary judgment, the Court evaluates each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. U.S.*, 812 F.2d 1387, 1391 (Fed.Cir., 1987); *Berrum v. Freyberger*, No. 01 C 802, 2004 WL 557394, *2 (N.D.Ill., 2004).

When Defendants filed their motion for summary judgment, they included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir., 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir., 1982). This notice clearly sets out the requirements of this Court's Local Rule 56.1. In particular, the notice explains that Plaintiff's response must comply with Federal Rule of Civil procedure 56(e) and Local Rule 56.1.

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain:
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir., 2004); *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir., 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process); *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir., 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir., 1998) ("[R]ules apply to uncounseled litigants and must be enforced."); *Jones v. Phipps*, 39 F.3d 158,

163 (7th Cir., 1994); *Boutte v. Spellings*, No. 07 C 3233, 2009 WL 377716, *1 (N.D.Ill., 2009). Despite being given this notice, Plaintiff response to Defendants' motion is deficient. Plaintiff did not file a response to Defendants' Rule 56.1(a) Statement of Material Facts as required by Rule 56.1(b)(3)(A). Accordingly, these statements are deemed admitted. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir., 1997); L.R. 56.1(b)(3)(B). Plaintiff did file eleven of his own "undisputed facts." However, Plaintiff's undisputed facts do not comply with Rule 56.1(b)(3) because he failed to cite to supporting materials as to any of his proposed undisputed facts. Instead, Plaintiff filed over 160 pages of exhibits. Accordingly, Plaintiff's statements are not included in the Court's analysis.

## II. **FACTS**

Plaintiff was a pre-trial detainee housed in Division 5 of the CCDOC from September 22, 2007, until October 31, 2007. (Def.s' 56.1(a)(3) Statement ¶ 1.) On September 22, 2007, Plaintiff went through a medical screening that included both a physical and psychological evaluation. (*Id*. ¶ 2.) During the psychological evaluation, Plaintiff stated that he did not suffer from any psychological problems and that he had never received psychiatric treatment or medication. (*Id*. ¶ 4.) During the physical evaluation, Plaintiff complained to medical personnel of chest pains and he requested further treatment. In response,

Cermak Hospital medical personnel performed a chest x-ray on September 25, 2007. The examination results indicated that there were "no abnormalities in [his] heart and aorta were normal and [his] lung filed were clear." (*Id*. ¶ 3.)

On October 4, 2007, Plaintiff complained of lower back pain and asthma. That same day, Plaintiff was transported to Cermak Hospital, where he was treated by medical personnel. Plaintiff was prescribed a pain medication for his back pain and provided an inhaler for his asthma. (Def.s' 56.1(a)(3) Statement ¶ 5.)

On October 13, 2007, another detainee in CCDOC spit in Plaintiff's face, including the inside of his mouth. (Def.s' 56.1(a)(3) Statement ¶ 6.) Although Plaintiff did not feel any physical ailments as a result of the incident, he sought medical attention because he felt "degraded" by the assault. (*Id* ¶ 7.) Plaintiff was immediately taken to Cermak Hospital for evaluation. Plaintiff met with mental health personnel regarding the spitting incident. (*Id*. ¶ 8.)

On October 31, 2007, Plaintiff was transferred from Division 5 to Division 11. Upon his arrival at Division 11, Plaintiff was provided a change of clothing and bedding. Customarily, detainees receive a clothing and bedding "change" every one or two weeks. (Def.s' 56.1(a)(3) Statement ¶ 9.) On November 6, 2007, Plaintiff was transferred back to Division 5,

and he received another change of bedding and clothing. (*Id.* ¶ 10.)

On November 10, 2007, Plaintiff began experiencing "red spots" on his body. Plaintiff noticed one spot on his neck and one on his upper chest. Both spots were approximately half the size of a quarter. (Def.s' 56.1(a)(3) Statement ¶ 11.) When the spots first appeared, Plaintiff "didn't think it was really too much so [he] waited" before seeking medical attention for the spots. (*Id.* ¶ 12.) On approximately November 17, 2007, Plaintiff began to notice that the spots were increasing in both size and number. Plaintiff complained to Correctional Officer Sandoval about the spots. Officer Sandoval recorded Plaintiff's complaint in the tier logbook and telephoned medical personnel. (*Id.* ¶ 13.) Shortly thereafter, Sandoval was replaced by Correctional Officer Chico due to a shift change. Plaintiff complained to Officer Chico about the spots, and soon thereafter, Plaintiff spoke with Superintendent Hickerson regarding the spots. (*Id.* ¶ 14.) Superintendent Hickerson asked Plaintiff if he had ever had shingles, to which Plaintiff responded, "No." Superintendent informed Plaintiff that he would be sent to the hospital the next day. (*Id.* ¶ 15.)

On November 20, 2007, Plaintiff was transferred to Cermak Hospital for treatment. Paramedic Douglas examined Plaintiff and noted that he had small red bumps on his upper body and face. Plaintiff received a prescription for a non-specified "cream" to

treat his spots which he was instructed to apply twice a day to the infected areas. (Def.s' 56.1(a)(3) Statement ¶ 16.) On November 24, 2007, Plaintiff was taken to Cermak Hospital for more treatment. Plaintiff was evaluated by Physician Assistant Carasquillo. Plaintiff was again prescribed a cream to be applied to the infected areas twice a day. (*Id*. ¶ 17.)

On November 29, 2007, Plaintiff complained to unspecified officers that his condition was getting worse. That same day, Plaintiff was taken to Cermak Hospital and evaluated by Dr. Ting for approximately one hour. (Def.s' 56.1(a)(3) Statement ¶ 18.) Doctor Ting stated that he believed the spots were a result of some type of allergic reaction and prescribed an antibiotic, a different type of "lotion," and a change of clothes and bedding. They also ordered that a blood sample be taken for testing. Once Plaintiff's blood was drawn and he received his medication, Plaintiff was taken back to his cell. (*Id*. ¶ 19.) On December 7, 2007, Plaintiff provided a request slip for a change of clothes and bedding to Chief Wright who refused to accept the slip. (*Id*. ¶ 20.) On December 10, 2007, Plaintiff was transferred to Division 9, where he received a change of clothes and bedding. (*Id*. ¶ 21.) Plaintiff did not have any verbal or written contact with Sheriff Dart or Superintendent Godinez regarding the spitting incident or his medical treatment. (*Id*. ¶ 22.)

### III. ANALYSIS

The Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir., 1999); *Salazar v. City of Chicago*, 940 F.2d 233, 237-38 (7th Cir., 1991). A claim of deliberate indifference includes both an objective and subjective element. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir., 2002). As to medical care, "the objective element requires that the inmate's medical need be sufficiently serious." *Guiterrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir., 1997). A medical need is sufficiently serious if it has been diagnosed by a physician as mandating treatment or it so obvious that even a lay person would recognize the necessity of medical treatment. *See Foelker v. Outgamie County*, 394 F.3d 510, 512 (7th Cir., 2005).

The subjective element requires that the correctional official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir., 2006). Negligent or inadvertent failure to provide adequate medical care is not sufficient to state a claim under 42 U.S.C. § 1983 because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Furthermore, medical malpractice is insufficient to demonstrate deliberate indifference. *See Foelker*, 394 F.3d at

513. However, an inmate does not need to prove that the official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir., 1996). Instead, it is sufficient if the inmate demonstrates that the official actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037. An inmate can demonstrate that an official knew of a substantial risk of harm if the fact of that risk is obvious. *See Walker*, 293 F.3d at 1037. As applied to claims of deliberate indifference based on a physician's treatment decision, "the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396. A difference of opinion among physicians as to the proper treatment is insufficient to support a finding of deliberate indifference. *See Norfleet*, 439 F.3d at 396.

In the instant case, even assuming that Plaintiff's medical conditions – chest pains, back pain, asthma, and red spots – are serious medical conditions, Plaintiff has wholly failed to demonstrate that any Defendant acted with deliberate indifference to his medical needs.

From the time Plaintiff was detained at Cook County Jail on September 22, 2007, until the filing of this complaint in December 2007, he was evaluated by medical personnel on eight separate

occasions. During this time-frame, Plaintiff received treatment for a number of unrelated complaints, including: (1) a medical examination and chest x-ray for chest pain within 3 days of advising staff of such; (2) a medical examination and medication the day of complaints of back pain and asthma; (3) medical attention the same day that another inmate spat in Plaintiff's face; (4) treatment for "red spots" within days of complaining of the red spots; and (5) continued timely treatment, including medications and a blood test as part of his treatment for "red spots."

Plaintiff argues, in his "declaration," that summary judgment should be denied because much of what the Defendants present in their motion for summary judgment is not true. However, Plaintiff cannot rely simply on his "declaration" and 160 pages of unspecified exhibits to refute the motion for summary judgment. Furthermore, his general disagreement with the time it took to receive some of his treatments and argument that more should have been done in his treatments, are meritless. One or two isolated incidents of not receiving prompt medical attention do not amount to deliberate indifference. *See Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir., 2008); *Gutierrez*, 111 F.3d at 1366. Furthermore, the dissatisfaction or disagreement with the method of treatment or inability to effect a final cure does not suggest that those

who treat an inmate exhibited deliberate indifference. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir., 1996).

As to Defendants Sheriff Dart and Director Godinez, neither Defendant was aware of Plaintiff's medical complaints and neither was involved in Plaintiff' medical treatments. Liability under the Civil Rights Act requires a defendant's personal involvement in the alleged constitutional violation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir., 2003). Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir., 2005) (citations omitted). Thus, neither Defendant could be individually liable. Furthermore, as a general rule, prison administrators may reasonably rely on the expertise of medical professionals who are treating the inmate claiming deliberate indifference. *See Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir., 2006).

As to any claims against Sheriff Dart and Director Godinez in their official capacities, claims filed against government officers in their official capacity are actually claims against the government entity for which the officers work. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir., 2007). A governmental entity is liable for

damages under Section 1983 only if the plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978). Unconstitutional policies or customs generally take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or (3) a constitutional injury was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir., 2000). In the case at bar, Plaintiff has not demonstrated an unconstitutional custom, policy or municipal practice, and none can be inferred.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's Motion for Leave to File an Amended Complaint is denied. Defendants' Motion for Summary Judgment is granted. Plaintiff's Cross-Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

    Harry D. Leinenweber, Judge
    United States District Court

**DATE:** 4/16/2009